UNITED STATES of America, Plaintiff-Appellee,

v.

Sherron BASEY, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

J. C. RAMSEY, Defendant-Appellant.

Nos. 78–1191, 78–1203.

United States Court of Appeals, Ninth Circuit.

Dec. 17, 1979.

Rehearings Denied Feb. 25 and March 10, 1980.

---

Burton Marks, Los Angeles, Cal., for defendant-appellant.

Allen Levine, Los Angeles, Cal., Asst. U. S. Atty., for plaintiff-appellee.

Before ELY and TRASK, Circuit Judges, and EAST,* District Judge.

TRASK, Circuit Judge:

Basey and Ramsey appeal their convictions in the United States District Court of conspiring to possess heroin with intent to distribute in violation of 21 U.S.C. § 846 (Count I) and of distributing and possessing with intent to distribute one-half kilogram of heroin on or about March 9, 1977, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B) (Count II). The case was tried to the court sitting without a jury and each defendant was convicted of both counts. The defendants were sentenced to concurrent terms. Their separate appeals were consolidated.

Appellants challenge the sufficiency of the evidence sustaining their convictions and contend that a voice identification of Ramsey violated due process, that a chemist's testimony was inadmissible because the evidence was tampered with, and that admission of Ramsey's California driver's license, issued under an alias, was "fruit of the poisonous tree." We find no merit in these contentions and affirm the convictions.

Appellants' convictions are based upon a series of drug transactions involving appellants and three other principle parties, Bruno, Williams, and Henderson. Bruno, a New York police officer working undercover, contacted Williams in New York with regard to the possibility of purchasing some heroin. Williams discussed the matter with Henderson who later called from Los Angeles to inform Williams that he had a contact who could supply the heroin. Williams flew to Los Angeles where he met Henderson and was taken to meet appellant Basey. Basey gave Williams a "free sample" of brown rock heroin and said she could supply whatever Williams needed. Later, Williams gave Henderson $10,000 to buy some heroin from Basey. Henderson made the purchase. Basey, Henderson, and Williams then met at a restaurant to toast their new venture. Williams mixed the sample Basey had given him with an equal amount of the purchased heroin, returned to New York, and gave Officer Bruno the mixture.

Thereafter, Williams twice traveled to Los Angeles and made similar purchases.

* Honorable William G. East, United States Senior District Judge, District of Oregon, sitting by designation.

On both occasions, he met Henderson in the latter's apartment. Henderson would call Basey, take Williams' money, and return a few hours later with the drugs.

In February 1977, Bruno, in New York, negotiated with Henderson, in Los Angeles, for a large 1½ kilo purchase. Henderson later told Bruno, in a call recorded by Bruno, that he had a contact for the heroin and would come to New York to close the deal. Williams met Henderson at the airport and they both met with Bruno. Henderson told Williams that he had met Basey's connection so he would no longer have to make purchases through her. The three negotiated an additional purchase. On March 9, 1977, while in New York to deliver ½ kilo of heroin to Bruno, Henderson was arrested. He agreed to cooperate with the government and to record future telephone conversations with his heroin source. The next day, Henderson called his source, appellant Ramsey. Henderson told Ramsey that he and Bruno would come to Los Angeles to close the large 1½ kilo deal which was still pending. Bruno was introduced to Ramsey over the phone and Ramsey identified himself by his nickname, "Snake." Bruno and Henderson together with other federal agents, returned to Los Angeles. After some negotiations with Ramsey, the big deal fell through and Ramsey was arrested.

■ Appellants first challenge the sufficiency of the evidence, Ramsey as to Count I and Basey as to both counts. In examining the evidence, the standard we must apply is whether there is substantial evidence, taken in the light most favorable to the government, supporting the convictions. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ Ramsey attacks the sufficiency of the evidence on two principle grounds. First, he contends that there was insuffi-

cient evidence identifying him as the individual named "Snake" who was Henderson's source and who participated in several recorded telephone negotiations with Henderson and Bruno. A number of witnesses testified that Ramsey was known as "Snake." A DEA agent identified Ramsey's voice from the recorded conversations. The government also introduced telephone registers indicating increased telephone activity between Ramsey, Basey and Henderson during the time of the sales. Voice identification may be accomplished by direct or circumstantial evidence. *United States v. Turner*, 528 F.2d 143, 163 (9th Cir.), *cert. denied*, 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975) and 429 U.S. 837, 97 S.Ct. 105, 50 L.Ed.2d 103 (1976). We find that there was sufficient evidence establishing Ramsey's identity.

■ Second, Ramsey asserts that the trial judge erred by receiving evidence of Ramsey's participation in the conspiracy before Ramsey's identification was established. The order in which this evidence comes in, subject to a motion to strike, is well within the trial court's discretion. Its exercise of that discretion will only be reversed in the event of clear abuse. *United States v. Weiner*, 578 F.2d 757, 768 (9th Cir.), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978). There was no abuse of discretion in this case. Ramsey's challenge to the sufficiency of the evidence is without merit.

■ In challenging the sufficiency of the evidence supporting her convictions, Basey first asserts that there was nothing other than co-conspirator testimony to prove that she was a part of the conspiracy. The government, however, supported co-conspirator testimony of her participation with evidence of increased telephone activity during the time of the various sales,[1] and

---

1. We find no error in the admission of Basey's college records to establish her address. A sufficient custodian testified that the records were made and kept in the regular course of college business. It is unimportant under Fed. R.Evid. 803(6) that the custodian did not herself record the information or know who re-

corded the information. *See e. g., United States v. Reese*, 568 F.2d 1246, 1252 (6th Cir. 1977); *United States v. Jones*, 554 F.2d 251, 252 (5th Cir.), *cert. denied*, 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142 (1977). In this case, the "person with knowledge" required by the rule would, of course, be Basey herself. No

with evidence of her conversation with Williams during which they discussed future transactions which did eventually take place. In addition, this court has held that even uncorroborated accomplice testimony is "sufficient evidence upon which to base a conviction if the testimony 'is not incredible or unsubstantial on its face.'" *United States v. Sigal*, 572 F.2d 1320, 1324 (9th Cir. 1978). There was substantial evidence to support Basey's conviction of Count I.

Basey challenges her conviction of Count II on the ground that there was no evidence of her continued involvement in the conspiracy on March 9, 1977, when the transaction upon which that charge is based occurred. Under the concurrent sentence doctrine of *Benton v. Maryland*, 395 U.S. 784, 791, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), which this court follows, *see United States v. Walls*, 577 F.2d 690, 699 (9th Cir.), *cert. denied*, 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978), we need not reach appellant's arguments on this count if her conviction of the first count is valid. Basey, however, can be convicted of the substantive acts of her co-conspirators whether or not she directly participates in those acts. *United States v. Testa*, 548 F.2d 847, 855 (9th Cir. 1977). Her participation in the conspiracy is presumed to continue until the last overt act of the conspirators unless she produces affirmative evidence of withdrawal. *United States v. Panebianco*, 543 F.2d 447, 453 (2d Cir. 1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977). Basey produced no such affirmative evidence. Consequently, her conviction of Count II was proper in any event.

Ramsey next contends that the procedure leading to DEA agent Smith's voice identification of him was so impermissibly suggestive as to violate due process. Use of agent Smith's testimony became necessary when testimony from other potential identification witnesses was suppressed shortly before trial. In addition, although somewhat suggestive,[2] the identification procedure employed was not so suggestive that "the mental image derived from the identification procedure supplant[ed] that derived from the witness's own experience." *United States v. Kim*, 577 F.2d 473, 483 (9th Cir. 1978), *quoting United States v. Pheaster*, 544 F.2d 353, 370–71 (9th Cir. 1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977). Thus the requirements of voice identification were met. *See United States v. Pheaster, supra*, at 369–71.[3]

Both appellants assign error to the admission into evidence of a stipulated chemist's report. The report concluded that the substance given to Williams by Basey as a "sample," and subsequently delivered to Officer Bruno, was heroin. Williams testified that he mixed the sample with a equal amount of a substance purchased from Ba-

---

double hearsay problem arises, therefore, as admissions and adoptive admissions are not hearsay under Fed.R.Evid. 801(d)(2). The trial court did not abuse its discretion by admitting the records.

**2.** Agent Smith was asked to listen to tapes and identify any voices he heard. He was not asked if he knew Ramsey before he heard the tapes or if he could identify Ramsey's voice. In this regard, the situation conforms with the recommendations of this court in *United States v. Pheaster*, 544 F.2d 353, 370 (9th Cir. 1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977). He was aware, however, that the tapes he was listening to were to be evidence in the Ramsey and Basey trial and that it was likely that one of the defendant's voices would be on the tapes. He also knew that "Snake," a name used on the tapes, was a nickname for Ramsey.

**3.** Ramsey contends that agent Smith's testimony was impeached during cross examination, thereby demonstrating the unreliability of his identification. Smith, however, testified that he had several conversations with Ramsey including one lasting 30 minutes when Ramsey was arraigned just seven months prior to trial. He testified that he was able to recognize Ramsey's voice after listening to the tape for only 15 to 20 seconds. He also testified as to several characteristics of Ramsey's voice which he noticed in making his identification. He listened to additional tapes and identified one of the conversants as Ramsey. Thus, there was substantial evidence from which the district court could conclude that Smith's identification was reliable.

sey with Henderson serving as an intermediary. Appellants contend that this mixing resulted in an alteration of the evidence in violation of the rule of *United States v. Godoy*, 528 F.2d 281 (9th Cir. 1975), and *Gallego v. United States*, 276 F.2d 914 (9th Cir. 1960). Appellants' reliance upon these cases is misplaced. *Godoy* and *Gallego* require that the government prove no alteration or tampering with the evidence *after* the government obtains custody of it. Any alteration which occurred in this case was done by a co-conspirator before the government obtained custody. The district court did not abuse its discretion by admitting the evidence.

 Finally, Ramsey contends that the government should not have been permitted to introduce his driver's license on the ground that it was "fruit of the poisonous tree."[4] Prior to trial, all evidence resulting from Ramsey's arrest and subsequent search, including his driver's license, was suppressed. Thereafter the prosecutor subpoenaed a copy of Ramsey's license from the California Department of Motor Vehicles, which was introduced at trial as identification evidence.

As this court stated in *United States v. Brock*, 571 F.2d 480, 483 (9th Cir. 1978), "information obtained through an unconstitutional search does not 'become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others . . .' *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920)." In response to inquiries by the district court, the Assistant U.S. Attorney stated that the license was obtained through normal investigative techniques and that all information necessary to subpoena it was known prior to the illegal search and seizure. Therefore, we hold that the license was not suppressable as "fruit of the poisonous tree."[5]

The convictions of both appellants were supported by substantial evidence on both counts. The district court committed no error by admitting into evidence agent Smith's voice identification of appellant Ramsey, the chemist's report, or appellant Ramsey's driver's license. The convictions are AFFIRMED.

---

4. Ramsey also objects to admission of the license on relevancy grounds. The license was issued in the name of "Charles Stein," had Ramsey's picture, and was dated three months after the end of the conspiracy. Ramsey contends that the license reflected current facts only, not facts existing during the conspiracy. The license, however, was submitted on the issue of identification and was clearly relevant to demonstrate Ramsey's use of the alias "Charles Stein." Admission into evidence was not an abuse of the district court's discretion.

5. Ramsey now questions the district court's failure to hold a hearing on the issue of independent source. However, he requested no hearing below, and the government's representations that the source was independent were never even questioned.