UNITED STATES of America,
Plaintiff-Appellee,

v.

Carlotta Santana SAAVEDRA,
Defendant-Appellant.

No. 80–1834.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 1981.

Decided Aug. 24, 1982.

Michael J. Treman, Santa Barbara, Cal., for defendant-appellant.

Theresa A. Kristovich, Los Angeles, Cal., for plaintiff-appellee.

Before FLETCHER and NORRIS, Circuit Judges, and EAST,* District Judge.

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

EAST, District Judge:

Saavedra appeals from her judgments of conviction for conspiracy to commit wire fraud in violation of 18 U.S.C. § 371, and three substantive counts of wire fraud in violation of 18 U.S.C. § 1343. We note jurisdiction and affirm.

The charges arose out of Saavedra's participation in a scheme to fraudulently obtain Western Union money orders by using improperly acquired credit card numbers. Saavedra contends that her constitutional and statutory rights to a speedy trial were violated due to a delay in the trial after the jury had been impaneled. She also claims that there was insufficient evidence to support her convictions on the substantive wire fraud counts, that she was prejudiced by the erroneous admission of hearsay evidence and improper statements by the Government's counsel during closing argument, and that her double jeopardy rights were violated. We reject each of these claims.

## I. BACKGROUND

The underlying fraud involved wrongfully charging Western Union money orders to improperly obtained Master Charge numbers. The principal architects of the fraud were inmates in the pro. per. section of the Los Angeles County Jail. The inmates would telephone individuals whose numbers had been obtained from the city phone book, and would pose as law enforcement or bank security personnel checking on credit card problems. The inmate would have the person read off his or her credit card number to "verify" it, and would then call Western Union and order a money order, charging it to the misappropriated credit card number. The inmate would direct the money order to a specific Western Union office, made out to someone on the outside who would pick it up.

The person receiving the money order had to present identification and had to identify the amount of the order, the sender, and when it was sent. Saavedra, using the names Carlotta Santana and Charlotte Carpenter, acted as one of these outside persons. She later deposited most of the money in the inmates' jail accounts.

Saavedra was arrested on November 10, 1977 at the Pomona Western Union office as she signed for a money order in the name of Carlotta Santana, using an identification card in that name.

Evidence concerning the inside part of the operation was provided by one Theodore Rogers, a prisoner and informant. He had observed several of the inmates searching phone books and copying numbers, and overheard them posing as security officers on the phone asking people about their credit card numbers. On one occasion, he retrieved a piece of paper which an inmate had written on during his calls. It had the name Carlotta Santana on it, as well as several names and numbers.

Trial was originally scheduled for September 18, 1980, but was continued to September 30 at Saavedra's request. On that day, a jury was impaneled and sworn to fairly try the case. The District Court proceeded to hear suppression motions. The hearing on these motions continued through October 3. There was a discussion about a stipulated fact settlement, with the Judge expressing exceptional displeasure at the conduct of the Assistant U. S. Attorney. The court on its own motion continued the case until October 9 to allow time for determination of possible guilty pleas. On that date, the U. S. Attorney requested that the Judge voluntarily recuse himself, based upon the strenuous conversations between the court and the prosecutor the previous week. The Judge declined to do so, but continued the case to allow briefing on whether he could voluntarily send it back for reassignment after a jury had been impaneled and sworn. Originally the continuance was for two and one-half weeks, to October 21, 1980, but Saavedra's counsel suggested October 28 to avoid conflict with other matters he had on October 21. The matter was continued to October 27.

On October 27, the Government again suggested that the Judge declare a mistrial and send the case back for reassignment. The Judge again declined to do so, and a

formal motion for recusal was made, which the court denied. The court also denied Saavedra's request to poll the jury to determine if they had been prejudiced by the delay. The jury trial commenced on October 28, 1980 and lasted four days. Saavedra was found guilty of each of the counts with which she was charged.

## II. DISCUSSION

### A. *Speedy Trial Claims*

Saavedra contends that the twenty-nine day delay between the impaneling of the jury and the beginning of trial violated her Sixth Amendment and statutory rights to a speedy trial,[1] her Fifth Amendment right to due process, and Federal Rule of Criminal Procedure 48(b).

Saavedra argues that the delay was caused by inappropriate Government activity stemming from an ongoing dispute between the Judge and the U. S. Attorney's women lawyers. She suggests that the Government did not have an adequate reason to seek reassignment of the case, as evidenced by the fact that the Government continued to seek voluntary transfer of the case, rather than making a formal motion for disqualification, after the court had indicated that it would not voluntarily transfer the case and had granted the continuance to permit a formal motion for disqualification to be made.

### 1. *Sixth Amendment*

■ The factors which must be balanced in determining whether post-indictment delay has violated a defendant's Sixth Amendment right to a speedy trial are: (1) the length of the delay, (2) the reasons for the delay, (3) whether the defendant asserted his or her right to a speedy trial, and (4) whether the defendant has been prejudiced by the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972); *United States v. Saunders*, 641 F.2d 659, 665 (9th Cir. 1980), *cert. denied*, 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981); *United States v. Morse*, 491 F.2d 149, 156–57 (1st Cir. 1974).

■ The delay complained of here was of only three and one-half weeks duration, one week of which was for the convenience of Saavedra's counsel. Saavedra was not in custody during the time period in question, and she makes no claim that any witnesses became unavailable or suffered loss of memory due to the delay. She contends, however, that the jury may have been prejudiced by the delay or publicity surrounding the conflict between the Judge and the Assistant U. S. Attorney, and that she was prevented from demonstrating any such prejudice because the court refused to permit her to question the jury about it.

We find no likelihood that the delay here prejudiced Saavedra. After being impaneled on October 3, the jury only had to report to court on October 9, and then on October 28 when trial started. At the beginning of the trial, the Judge explained to the jury that he had recently been appointed Chief Judge of the District, and that the delay was in part due to the administrative burdens associated with this responsibility, as well as the legal problems in the case. The court made no remark implicating the defendant for the delay. Even though the court declined Saavedra's request to have the jury polled for prejudice due to the delay, nothing indicates that the delay prejudiced Saavedra in the jury's mind. No claim of prejudicial publicity was raised below, and there is no evidence of any such publicity properly in the record before us.

We reject Saavedra's contention that the delay here was for an improper purpose. Our review of the record convinces us that the government had reason to be concerned about bias from the bench. In refusing to voluntarily transfer the case at the hearing of October 9, the District Court indicated that it was concerned both about the propriety of sending the case back for reassignment without declaring a mistrial, to which the defendant refused to consent, and about the double jeopardy implications of declaring a mistrial over defendant's objection.

---

1. Appellant's attorney limited his objection to the proceedings in the District Court to alleged violations of Saavedra's Sixth Amendment right to a speedy trial.

The Government researched these questions and submitted a memorandum prior to the hearing on October 28. Although the Government did not make the anticipated formal motion for disqualification, it had ample reason to believe that the court would reconsider its refusal to voluntarily transfer the case if its procedural concerns were answered.

Because the delay here was short, the likelihood of prejudice minimal, and the reasons for the delay permissible, we find no Sixth Amendment violation. For the same reasons, we reject Saavedra's contention that the delay violated the due process claim. We must "determine only whether the action complained of ... violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' ... and which define 'the community's sense of fair play and decency,'" *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977) (citations omitted). We find no such violation here.

### 2. *Rule 48(b)*

■ The defendant also contends that the court should have dismissed the indictment pursuant to Fed.R.Crim.P. 48(b), which provides that the court may dismiss an indictment, information or complaint for unnecessary delay in bringing a defendant to trial. This rule grants District Courts much discretion, however, and dismissal on speedy trial grounds is not mandatory unless the defendant's constitutional speedy trial rights have been violated. *United States v. Edwards*, 577 F.2d 883, 887 (5th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978). We need not decide whether Rule 48(b) applies after a jury has been impaneled because even if it does,

there was no abuse of discretion in the court's decision not to dismiss the indictment here.

### 3. *Speedy Trial Act*

■ We need not determine whether the delay here exceeded the time limits prescribed by the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (Supp.1981). Saavedra did not make any claims based on the Act at trial; her motion to dismiss was based solely on the Sixth Amendment. Nor was the issue raised on appeal until oral argument. When an issue is not raised by objection at trial, it cannot be raised on appeal "except in a very exceptional situation wherein it appears to be necessary in order to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." *United States v. Wysong*, 528 F.2d 345, 348 (9th Cir. 1976). The error here, if any, certainly did not amount to "plain error" and is thus not reviewable under Fed.R.Crim.P. 52(b).[2] *Id.; United States v. Lopez*, 575 F.2d 681, 685 (9th Cir. 1978).

### B. *Evidentiary Challenges*

■ Saavedra next contends that the District Court erred in admitting hearsay evidence against her. She complains of the admission of the testimony of three victims of the credit card fraud scheme. These witnesses testified that in the fall of 1977 they received telephone calls from unknown males who identified themselves as law enforcement officers and elicited the victims' credit card numbers. The District Court ruled the testimony concerning statements made by the unidentified callers admissible as declarations of coconspirators. Fed.R. Evid. 801(d)(2)(E).

---

**2.** The Speedy Trial Act establishes a seventy day limit, subject to various exclusions, within which a trial must commence after indictment. 18 U.S.C. § 3161(c)(1), (h) (Supp.1981). Saavedra claims that this time period expired during the time between the day the jury was impaneled and the day the first testimony was received. This claim necessarily hinges upon the view that the trial did not "commence" until the evidentiary phase of the trial began when the first witness was called. We do not

decide at what point along the continuum from jury selection to the beginning of testimony a trial "commences" for purposes of the Act, because the issue was not raised at trial and does not amount to plain error. Even if we were to review the question and find that the Act was violated, Saavedra has waived any statutory right to dismissal she may have made by her failure to move for dismissal under the Act prior to trial. 18 U.S.C. § 3162(a)(2).

Saavedra contends that there was insufficient evidence of the existence of a conspiracy and her connection to it to permit the introduction of this evidence under the declarations of coconspirators exclusion from the hearsay rule. We need not reach this contention because the statements were not, in any event, hearsay. Fed.R.Evid. 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The testimony objected to here was not offered to prove that the statements made by the unidentified callers were true; i.e., that they were in fact law enforcement officials investigating credit card "problems." Instead, this testimony was introduced to show how the credit card numbers were fraudulently obtained by persons posing as law enforcement officers, thus providing circumstantial evidence that the later unauthorized use of those numbers to purchase money orders was intentional, and that others besides Saavedra were involved in the scheme to defraud.

█ Saavedra also claims that the evidence failed to sufficiently connect her to these phone calls, and that one of the calls which a witness was unable to date with certainty may have occurred outside the period of the conspiracy. We disagree. Three victims of the fraud testified that they had not charged or authorized anyone else to charge money orders to their credit card accounts. A representative of Western Union reviewed money order printouts and testified that money orders had been charged to these credit card accounts. Soon after the money orders were sent, Saavedra, sometimes using a pseudonym, deposited similar amounts of money in the bank accounts of two of the inmates. This evidence sufficiently connected Saavedra to the inmates and the money orders to permit the introduction of testimony concerning the fraudulent phone calls through which the victims were induced to reveal their credit card numbers.

█ As to the witness who could not recall the exact date that he received one of the fraudulent phone calls, he did testify that it was two or three years prior to the trial. The time period of the scheme charged was actually three years earlier, and the dates of the charge card misuse could justify the jury's inference that the conversations occurred at the time of and were connected with this scheme.

Saavedra also objects to the testimony of another cardholder about an inmate phone call, the testimony of an informant concerning that phone call, and the introduction of a piece of paper used by the caller which bore the cardholder's phone and credit card numbers as well as the name "Carlotta Santana," an alias of the defendant. This piece of paper was retrieved by the informant after the caller discarded it. This phone call, in which the inmate impersonated a sheriff's officer, took place two days after Saavedra was arrested.

Saavedra argues that the testimony and document are hearsay, that her part in the conspiracy ended on November 10th, and that the evidence does not fall within the rule excluding coconspirators' declarations from the definition of hearsay.

Again, this evidence does not fall within the definition of hearsay provided in Fed.R. Evid. 801(c). The testimony relating the contents of the conversation and the piece of paper was not offered for the truth of the matters asserted therein, but was offered as evidence of how the fraud was conducted and Saavedra's connection to it.

In addition, this evidence constitutes admissible statements of coconspirators in furtherance of a conspiracy. Fed.R.Evid. 801(d)(2)(E). Although any statement made by Saavedra after her arrest could not be used against her fellow conspirators, any statements made by them in furtherance of the conspiracy are admissible against her as long as the conspiracy survived. *United States v. Marques*, 600 F.2d 742, 750 (9th Cir. 1979), *cert. denied*, 444 U.S. 858, 100 S.Ct. 119, 62 L.Ed.2d 77 (1979) and 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980); *United States v. Testa*, 548 F.2d 847, 852 (9th Cir. 1977); *United States v. Wentz*, 456 F.2d 634, 637 (9th Cir. 1972).

Saavedra's reliance on *Sandez v. United States*, 239 F.2d 239 (9th Cir. 1956), is mis-

placed. This court noted in *Marques* that any use of the language of *Sandez* "would no longer be proper" after the court's ruling in *Wentz*, and that even before *Wentz*, the *Sandez* interpretation of the law was a questionable one. *United States v. Marques*, 600 F.2d at 750 n.4. It is clear that Saavedra's arrest did not terminate the conspiracy itself; her coconspirators were apparently unaware of her arrest and were continuing their activities inside the jail.

■ Finally, Saavedra objects to the admission of two wires sent by a David Burder and two wires sent by a David Porter as being unconnected to the charges against her. Two were money orders sent to Saavedra under the name Charlotte Carpenter and two were money orders sent to a Ruth Hamly, a name used by another of the conspirators to pick up money for the inmates. The name Burder was apparently a misprint and should have been Porter, as the credit card number on Porter's card was shown to be the same as on Burder's. Further, the money orders to Ruth Hamly could be inferred to be fraudulent and part of the scheme as they were charged to the same Porter number and without his knowledge or consent. Thus, the Government showed a sufficient connection between the exhibits and the defendant for their admission as evidence.

C. *Closing Argument and Courtroom Atmosphere*

Saavedra next asserts that she was substantially prejudiced by misstatements by Government counsel in closing arguments and by the continuing dispute between Government counsel and the trial judge. Neither Government counsel's argument nor the dispute constitutes grounds for reversal.

There are three asserted misstatements to which Saavedra objects: that Government counsel stated that cardholder Porter was the same person whose name appeared in one of the transactions as "Burder," that Saavedra used the alias "Hamly" in picking up the money orders and that Saavedra had been in the Los Angeles County Jail. The Government offered evidence that Burder and Porter were the same in that both names were used on transactions charged to the same credit card number; a misprint apparently resulted in the name difference.

The Government admitted inadvertently referring to the use by Saavedra of the alias Hamly. However, the Government relied upon Saavedra's use of another alias, Carpenter, which appears with her picture and description on one money order and with her description on others. The references to Saavedra's use of an alias were thus based on evidence in the record and the two misstatements of the name amount to harmless error. Further, the trial judge instructed the jury that arguments by counsel were not evidence to be considered in their deliberations.

■ During her final argument, Government counsel made a remark indicating that Saavedra had been in the County Jail. Defense counsel interrupted her with an objection and the trial judge immediately instructed the jury to disregard the statement and pronounced it misconduct. Inappropriate comments by counsel during closing argument to the jury only require reversal where they are "so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge." *United States v. Parker*, 549 F.2d 1217, 1222 (9th Cir.), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977).

■ Here, in addition to instructing the jury to disregard the comment, the trial judge stated that he could not recall any evidence that Saavedra had been in jail. This was sufficient to neutralize any prejudice to Saavedra.

■ Saavedra relies upon *Peckham v. United States*, 210 F.2d 693 (D.C.Cir.1953), for the proposition that the trial judge's dispute with Government counsel through-

out the trial created an atmosphere in which she could not obtain a fair trial. That case dealt with hostility between the trial judge and defense counsel, which was not present in Saavedra's trial. The trial judge's displeasure here was solely directed at Government counsel, as Saavedra admits, and most of the disputes took place in the absence of the jury. Saavedra attempts to assert that there was a backlash of sympathy for Government counsel on the part of the jury. However, no evidence of this was produced, and our review of the record indicates no likelihood that it occurred. The *Peckham* court based its reversal of conviction not only on the trial judge's hostility to defense counsel, but also on the resulting rejection by the court of some of the defendant's evidence, the disproportionate amount of the judge's charge to the jury which he devoted to the Government's case, and on the prejudicial jury instructions given. Saavedra suffered no comparable prejudice resulting from the dispute. There was no substantial prejudice to Saavedra.

D. *Sufficiency of the Evidence and Double Jeopardy Claims*

The defendant contends that the evidence was insufficient to support her convictions on the substantive wire fraud counts, both because the Government failed to prove fraudulent intent, and because there was no evidence to prove that she "caused" a wire to be sent, as required by 18 U.S.C. § 1343.[3]

 In determining the sufficiency of the evidence, the appropriate standard of review is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. *Jackson v. Vir-*

*ginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Bailey*, 607 F.2d 237, 243 (9th Cir. 1979), *cert. denied*, 445 U.S. 934, 100 S.Ct. 1327, 63 L.Ed.2d 769 (1980).

To establish the fraud required by 18 U.S.C. § 1343, the Government must demonstrate, directly or circumstantially, that Saavedra knew of or was in reckless disregard of the scheme's deception. *United States v. Jewell*, 532 F.2d 697, 701–02 (9th Cir.) (en banc), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). Viewing the evidence in the light most favorable to the Government, the jury could easily find that Saavedra was a knowing partner in the fraud: a paper found in the prison with the phone numbers on it had her name at the top; she correctly answered the Western Union employees' questions as to the sender and the amount of the money orders; she used a false name with false identification when picking them up; and soon after each pickup she deposited similar amounts of money in the prison accounts of the inmates who were perpetrating the scheme.

 There is no question that the evidence was sufficient to establish Saavedra's knowing participation in the conspiracy, or that it was sufficient to establish that Saavedra's coconspirators, with fraudulent intent, caused wires to be sent in furtherance of a scheme to defraud. A defendant is vicariously liable for the substantive acts of her coconspirators whether or not she directly participates in such acts, so long as those acts are committed pursuant to and in furtherance of the conspiracy. *United States v. Basey*, 613 F.2d 198, 202 (9th Cir. 1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 274 (1980); *United States v. Beecroft*, 608 F.2d 753, 757 (9th

---

**3.** 18 U.S.C. § 1343 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or tele-

vision communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

Cir. 1979). Further a conspirator who joins a pre-existing conspiracy is bound by all that has gone on before in the conspiracy. *United States v. Traylor*, 656 F.2d 1326, 1337 (9th Cir. 1981); *United States v. Knight*, 416 F.2d 1181, 1184 (9th Cir. 1969). Thus, even if Saavedra is correct in asserting that the evidence showed only that she picked up the money orders after they had been sent and not that she caused the wires to be sent, she is nonetheless liable for the acts of her coconspirators in causing those wires to be sent.

■ Saavedra's vicarious liability for the acts of her coconspirators vitiates her double jeopardy claim. The basis of the claim is that, because there was allegedly insufficient evidence from which the jury could have found that Saavedra caused the wires to be sent, the jury's guilty verdicts on the substantive counts must have been based upon a finding that she had agreed to participate in a "scheme" to defraud, and that the basis for the conspiracy conviction was the same agreement. However, once the jury found Saavedra guilty of conspiracy, she was vicariously liable for the substantive acts of wire fraud of her coconspirators, irrespective of her own participation in those acts. We find no double jeopardy violation here.

CONCLUSION

The judgments of conviction entered by the District Court are affirmed.

AFFIRMED.