**UNITED STATES of America, Plaintiff,**

v.

**Duane N. VARBEL and Paul Harris, Defendants.**

**No. CR 83–207 PHX EHC.**

United States District Court, D. Arizona.

Jan. 18, 1984.

---

35. *See, e.g., supra,* at 675–678.

684

A. Melvin McDonald, U.S. Atty., D. Ariz., W. Ronald Jennings, Paul A. Katz, Asst. U.S. Attys., D. Ariz., Phoenix, Ariz., for plaintiff.

Duane N. Varbel, pro se, Gary L. Thomas, Phoenix, Ariz., for Varbel.

## ORDER

CARROLL, District Judge.

Counts I through IV in this matter have previously been severed from Counts V through IX. The latter counts name four defendants: Duane Varbel, Roy Osborn, Robert Bryan and Larry Schmidt. At issue is whether the trials of the co-defendants should be severed where one co-defendant wishes to use the testimony of another co-defendant and affidavits attest that such

testimony will be exculpatory, but that it will not be provided unless the co-defendant is tried separately. Three separate motions to sever have been filed.

 The general rule is that defendants jointly charged are jointly tried. *See United States v. Gay*, 567 F.2d 916, 919 (9th Cir.), *cert. denied*, 435 U.S. 999, 98 S.Ct. 1655, 56 L.Ed.2d 90 (1978). This rule applies in conspiracy cases. *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir.), *cert. denied*, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980). Fed.R.Crim.P. 14 provided, however, that the trial court may grant a severance when it appears that a defendant would suffer significant prejudice from a joint trial. Whether severance is necessary is a question left to the discretion of the court and will not be reversed without a showing of abuse of discretion. *United States v. Ortiz*, 603 F.2d 76, 78 (9th Cir.1979), *cert. denied*, 444 U.S. 1020, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980); *United States v. McDonald*, 576 F.2d 1350, 1355 (9th Cir.), *cert. denied*, 439 U.S. 830, 99 S.Ct. 105, 58 L.Ed.2d 124 (1978).

 The test for determining whether the trial court abused its discretion is whether a joint trial was so prejudicial as to require the trial judge to exercise his discretion in but one way. *United States v. Arbelaez*, 719 F.2d 1453 at 1460 (9th Cir.1983); *United States v. Escalante*, 637 F.2d at 1201; *United States v. Adams*, 581 F.2d 193, 198 (9th Cir.1979), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978). The burden for demonstrating prejudice rests on the defendant and is a heavy one. He must show more than that a separate trial might offer "a better chance" of acquittal. *Id.* at 198. The court must balance the burden and cost of a separate trial against the possible prejudice to the defendant. *United States v. Sears*, 663 F.2d 896, 900 (9th Cir.1981), *cert. denied*, 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982).

 The problem of severance arises because one defendant may not require another defendant to testify in his behalf and

thereby conflict with the privilege of a criminal defendant not to incriminate himself. If a defendant does testify, he waives his privilege not to answer questions about the crime charged. 1 Wright & Miller, Federal Practice and Procedure: Criminal § 225 (2d ed. 1982). Thus a co-defendant who does not wish to testify on his own behalf will be unlikely to testify on behalf of a co-defendant. *Id.*

 The majority of courts deny such severance, questioning whether the defendant would actually call his co-defendant if he could, and whether the co-defendant would not claim his constitutional privilege even in a separate trial. *Id.; see, United States v. Gay*, 567 F.2d at 919. As a result, courts have demanded "more than conclusory statements about the nature of the expected testimony." 1 Wright & Miller, Federal Practice and Procedure: Criminal § 225 (2d ed. 1982). The following factors are cited as significant in the Court's weighing as to whether a motion to sever co-defendants should be granted:

—That the defendant would call the co-defendant at a separate trial, that the co-defendant would testify, and that the testimony would be favorable to the moving party. *United States v. Haro-Espinosa*, 619 F.2d 789, 793 (9th Cir.1979); *United States v. Vigil*, 561 F.2d 1316, 1317 (9th Cir.1977).

—The degree to which the testimony would be exculpatory. *United States v. Boscia*, 573 F.2d 827, 832 (3d Cir.), *cert. denied*, 436 U.S. 911, 98 S.Ct. 2248, 56 L.Ed.2d 411 (1978).

—The good faith of the defendant's intent to have a co-defendant testify. *United States v. Kaplan*, 554 F.2d 958, 966 (9th Cir.), *cert. denied*, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315, *rehearing denied*, 434 U.S. 1026, 98 S.Ct. 755, 54 L.Ed.2d 774 (1977).

—The possible weight and credibility of the predicted testimony. *Id.*

—The probability that such testimony will materialize. *Id.*

—The economy of a joint trial. *Id.*

—The possibility that the trial strategy of a co-defendant will prejudice the defendant seeking severance. *Id.*

In the most recent Ninth Circuit discussion of this issue, the court, citing *Kaplan,* states that although a defendant asserts that co-defendants would present exculpatory testimony at a separate trial such severance will be denied if the defendant "never furnished the court with any representations from co-defendants' counsel either confirming their client's willingness to take the stand and or describing the nature of the exculpatory testimony." *United States v. Arbelaez,* 719 F.2d 1453 at 1460 (9th Cir.1983). Although the court did not expand on the issue, it is clear that defendant there did neither, and the district court's denial of severance was affirmed.

*Affidavits of Counsels for Defendants and Affidavit of Defendant Roy Osborn*

The affidavit of Roy Osborn in support of the motions for severance of defendants states in pertinent part:

—That Osborn will "provide exculpating information and testimony" for all co-defendants "if and only if my testimony is requested in a proceeding in which I am not a defendant nor in jeopardy."

—That George Sterling, Osborn's attorney, will provide the same type of testimony on behalf of all defendants only if Osborn agrees to waive his attorney-client privilege, and that Osborn will waive such only if the trials are severed.

—That George Sterling's sworn statement, given to the United States Attorney in August 1983, establishes and supports the basis for Osborn's affidavit.

The affidavit of George Sterling provides in pertinent part as follows:

—That Sterling will testify he advised Osborn to tape the government agents at issue in this matter.

—That Sterling will testify that through Osborn and direct conversations with Varbel, that Varbel was aware that the defendants were "in fact agents and provocators" and that Varbel's awareness of this occurred prior to Osborn's and Sterling's involvement.

—That Sterling will testify "if called as a witness" that when Osborn introduced the agents to defendants Bryan and Schmidt, Osborn knew that the clients/agents were in fact agents and this would be exculpatory by "laying the necessary foundation for a claim of entrapment defense" and a due process violation.

Varbel's attorney, Gary Thomas, provides the following avowals by affidavit:

—That Varbel needs the testimony of Osborn.

—That Varbel will call Osborn at a severed trial.

—That Osborn would testify at a severed trial.

—That Osborn's testimony would be favorable to Varbel given Osborn would testify that (1) Varbel told Osborn that Rex Reynolds and others were federal authorities, (2) that there was no conspiracy to commit any offenses, (3) that Varbel received no funds from federal agents or from Osborn, and (4) that Varbel did not know and never met co-defendants Bryan and Schmidt.

Bryan and Schmidt's attorney, Donald W. MacPherson, attests to the following by affidavit in support of the motions to sever:

—That Osborn and Sterling assured him they will testify for his clients and that MacPherson will call them as witnesses.

—That Osborn and Sterling will offer testimony "they believe to be exculpatory" and that MacPherson also believes the same.

—That Osborn and Sterling will make an offer of proof of their testimony *in camera* to avoid revealing defense strategies and tactics.

—That Osborn and Sterling's testimony is critical to the defense of his clients and they will be "seriously prejudiced" if no severance is granted.

*Analysis*

█ The critical issue here is not whether Osborn is willing to testify or whether

he will be called to do so by his co-defendants. Rather, the issue is whether his testimony will be sufficiently exculpatory to justify severance. It seems clear that the factors as set forth in *Kaplan* and the other cases cited above, imply that careful evaluation of the credibility and weight of the potential exculpatory testimony is only possible where the substance and effect of such can be determined.

Osborn's affidavit broadly states that his testimony will be "exculpating" and points to Sterling's affidavit to establish and support the basis for the severance. Osborn provides no specifics as to what the nature of *his* testimony would be. If we rely on Sterling's sworn statement to the government, as Osborn suggests, we are left to assume that Osborn would say that Varbel had told him that he was "suspicious" that the clients might be agents because they had "walked in off the street" and "had all this money, and wanted to set up a foreign corporation." Sterling's sworn statement at pages 25–27. At another point, Sterling states that Varbel was "not saying enough right to protect himself." *Id.* at 37. Later, Sterling states that "the assurance we had was that Duane was playing games with them, he wasn't going to take the money, he wasn't going to do anything. He was just dragging it," *Id.* at 40, and that they thought ninety percent it was a setup and laughed about it with Varbel. *Id.* at 48–51.

The Court is unwilling to assume that these specific statements of Sterling's are the exact exculpatory testimony which Osborn would provide. This leaves the Court in the position of having to first decipher the meaning of some of Sterling's statements, and second, to determine which of his statements are also those which Osborn will testify to.

Further, a fair reading of the Sterling transcript is that Osborn could potentially provide testimony that Varbel had a ninety percent suspicion that the clients were really agents and that Varbel was merely "playing games" with the agents. *Id.* at 40. Such testimony would apparently attempt to support the defense referred to by

Sterling in oral argument on pretrial motions to the effect that defendants knew the clients were really agents, but they merely played along with them. The significance of such testimony as exculpatory evidence, even if given by Osborn, is not certain, as it does not rise to the level of showing that Varbel was not involved in the conspiracy. Such testimony is not so clearly exculpatory as to outweigh the judicial economy of a joint trial. In addition, the weight and credibility of such testimony is questionable.

*Antagonistic Defenses*

Osborn argues that "apparent or real" antagonism of defenses between co-defendants may compel a severance of all defendants. See Osborn's Motion to Sever Charges and/or Defendants: Prejudicial Joinder, at p. 12. He cites no law to support this contention.

■ It appears settled that the mere presence of hostility between co-defendants, or the desire of each co-defendant to avoid conviction by placing the blame on the other does not require severance. *United States v. Brady*, 579 F.2d 1121, 1128 (9th Cir.1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979). In *United States v. Berkowitz*, 662 F.2d 1127, 1134 (9th Cir.1981), the court concluded that defenses are antagonistic if they are mutually exclusive and that severance would be required in such a circumstance "if the jury, in order to believe the core of testimony offered on behalf of (one) defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant."

Defendants have provided the Court with no evidence to believe that defenses are sufficiently antagonistic to justify severance.

*Guilt by Association*

■ Defendants claim that severance is warranted because they will be unfairly prejudiced by any showing of more substantial evidence against one than against another. However, showing that a defendant would have a better chance of acquittal

if tried separately is not sufficient. 662 F.2d at 1132. This is true for persons charged in a conspiracy, even though one defendant's role in the alleged offense may have been minor or the evidence against a co-defendant more damaging. A co-conspirator is vicariously liable for all of the acts of another conspirator even though he may not have directly participated in those acts so long as those acts are committed pursuant to and in furtherance of the conspiracy. *United States v. Basey,* 613 F.2d 198, 202 (9th Cir.1979), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 274 (1980); *United States v. Saavedra,* 684 F.2d 1293 (9th Cir.1982).

The defendants here have not met their burden of showing that without severance they would be denied a fair trial. *United States v. Sears,* 663 F.2d at 901.

Accordingly,

IT IS ORDERED that all motions to sever co-defendants are denied.