972 F.2d 1344
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Joseph DELANEUVILLE, Defendant-Appellant.
 No. 91-50600.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 7, 1992.
Decided Aug. 20, 1992.
 
 Before FLETCHER, O'SCANNLAIN and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 DeLaneuville was convicted after jury trial of conspiracy and of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. He now argues that (a) the district court erred when it denied his motion for a severance from codefendant Lions; (b) there was insufficient evidence to convict him of conspiracy; (c) the district court erred when it admitted the statements of codefendant Lions under the coconspirator exception to the hearsay rule; and (d) the district court erred in instructing the jury not to consider the possible sentence. We affirm.
 
 I. Severance
 
 3
 DeLaneuville moved unsuccessfully to have his trial severed from Lions' trial. We review the district court's denial of a motion to sever for abuse of discretion. United States v. Mariscal, 939 F.2d 884, 885 (9th Cir.1991).
 
 
 4
 Lions did not testify at the joint trial. The government introduced an audio tape, surreptitiously made, of a conversation between Lions and an undercover informant, in which Lions implicated DeLaneuville in a conspiracy to distribute methamphetamines. The tape was introduced into evidence against DeLaneuville through the coconspirator exception to the hearsay rule. Prior to trial, Lions had told a DEA agent that he had been lying in the taped conversation, and that DeLaneuville was not involved in the conspiracy, but this out-of-court statement by Lions exculpating DeLaneuville did not come before the jury.
 
 
 5
 DeLaneuville never established that, if the trial were severed, he could have obtained Lions' testimony. Lions' attorney said "we have not made up our mind as to whether or not Mr. Lions is going to testify ... but if [Lions] is, of course, acquitted at this trial, we would seriously look at this situation."
 
 
 6
 The trial judge explicitly relied on our decision in United States v. Vigil, 561 F.2d 1316 (9th Cir.1977), and his finding that "the co-defendant is taking the position that he may or may not testify at a severed trial" in denying the motion to sever. In Vigil, we held:
 
 
 7
 When the reason for severance is the asserted need for a codefendant's testimony, the defendant must show that he would call the codefendant at a severed trial, that the codefendant would in fact testify, and that the testimony would be favorable to the moving defendant.
 
 
 8
 Id. at 1317. DeLaneuville could not show that Lions "would in fact testify" at his trial if a severance were granted, so the trial judge's denial of the motion to sever was within his discretion under Vigil.
 
 II. Sufficiency of the Evidence
 
 9
 We review denial of the motion for judgment of acquittal by determining whether, when viewed in the light most favorable to the government, the evidence was sufficient for a rational jury to find the defendant guilty beyond a reasonable doubt. United States v. Dorotich, 900 F.2d 192, 195 (9th Cir.1990).
 
 
 10
 The evidence linking DeLaneuville to the conspiracy to distribute methamphetamines was sufficient to go to the jury and support a conviction. DeLaneuville was arrested in a hotel room in San Diego, where he and codefendants Bourgeois and Accomando attempted to purchase methamphetamines from a confidential informant and a DEA agent. The last call to arrange the San Diego transaction was made from DeLaneuville's residence in Louisiana. DeLaneuville flew under a false name to San Diego with codefendants Bourgeois and Accomando. The three of them went to the motel together, and went back and forth to each others' rooms before the transaction. DeLaneuville was present at the transaction, invited the agents into the motel room, and introduced Bourgeois. Accomando stated during the course of the transaction that DeLaneuville was present as security. DeLaneuville discussed the payment details and the future portion of the transaction with the undercover informant. Lions said on the tape that part of the money used in the attempt to purchase methamphetamines was DeLaneuville's. Reasonable jurors could conclude beyond a reasonable doubt from this and other evidence that DeLaneuville was a participant in the transaction, not merely someone who happened to be in the room where it took place.
 
 III. Hearsay
 
 11
 On the audio tape, Lions told the undercover informant ("CI") that DeLaneuville was a "good dude" and that some of the money used in the San Diego transaction was DeLaneuville's.
 
 
 12
 CI: Okay, who is that guy, Chuck, anyway?
 
 
 13
 Lions: Sam works for him. He's a good dude.
 
 
 14
 CI: Sam was saying you guys were trying to cut her out or something.
 
 
 15
 Lions: No.
 
 
 16
 CI: Oh.
 
 
 17
 Lions: No, just, um....
 
 
 18
 CI: Is some of that money, his money?
 
 
 19
 Lions: Yeah.
 
 
 20
 DeLaneuville, Accomando and Bourgeois had already been arrested when Lions made these statements, but Lions did not know of the arrest.
 
 
 21
 The district court ruled that the statement was that of a coconspirator, and therefore not hearsay, under Federal Rule of Evidence 801(d)(2)(E). This rule provides: "A statement is not hearsay if ... the statement is offered against a party and is ... a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."
 
 
 22
 DeLaneuville makes three arguments against admissibility: first, that there was insufficient evidence connecting him to the conspiracy; second, that the statement by Lions was not made "during the course" of the conspiracy; and third, that the statement was not made "in furtherance" of the conspiracy.
 
 
 23
 Our standard for reviewing the district court's finding connecting the defendant to the conspiracy is not settled in this circuit. See United States v. Gordon, 844 F.2d 1397, 1402 (9th Cir.1988). We need not resolve, however, whether the applicable review is for clear error, abuse of discretion or de novo, however, because the outcome would be the same regardless of the standard. See United States v. Tamez, 941 F.2d 770, 775 (9th Cir.1991); Gordon, 844 F.2d at 1402. Our review of sufficiency of the evidence establishes that even under a de novo standard, there was sufficient evidence connecting DeLaneuville to the conspiracy for Lions' statement to be admissible. "Once a conspiracy is shown, the prosecution need only present slight evidence connecting the defendant to the conspiracy." United States v. Crespo de Llano, 838 F.2d 1006, 1017 (9th Cir.1987). The hearsay itself may be considered in making the determination, Bourjaily, 483 U.S. 171, 178-79 (1987), although "there must be some evidence, aside from the proffered statements, of ... defendant's involvement." Gordon, 844 F.2d at 1402. The evidence regarding DeLaneuville's presence in the motel room where the methamphetamines transaction took place, and of his participation in that transaction, suffices to link him to the conspiracy in which Lions was also a member.
 
 
 24
 The district court's determinations that a statement was made "during the course" and "in furtherance" of a conspiracy are both reviewed under a clearly erroneous standard. United States v. Schmit, 881 F.2d 608, 610 n. 2 (9th Cir.1989).
 
 
 25
 Even though the drugs and money had been seized and DeLaneuville, Bourgeois and Accomando had been arrested, by the time Lions' statement was made, that statement was still admissible as having been made "during the course" of the conspiracy. So far as Lions knew, the conspiracy was still ongoing, and "statements made by an unarrested co-conspirator who is still operating in furtherance of the ongoing conspiracy may be introduced against the arrested conspirator." United States v. Taylor, 802 F.2d 1108, 1117 (9th Cir.1986) (citation omitted), cert. denied, 479 U.S. 1094 (1987); see also United States v. Saavedra, 684 F.2d 1293, 1298 (9th Cir.1982) (statements by fellow conspirators admissible against arrested coconspirator "as long as the conspiracy survived"). The substance of the phone conversation is evidence that the conspiracy had not yet ended. Lions did three things in the conversation--he assured the undercover informant about the money still owing on the transaction he believed to have been consummated in the motel room, about the additional four pounds of methamphetamines that he had promised to purchase, and about DeLaneuville, all in an apparent effort to avoid disruption of the ongoing transactions. See United States v. Mason, 658 F.2d 1263, 1269-70 (9th Cir.1981) (where arrests made of all but one conspirator after an eight-ounce delivery, but the original deal was for several pounds, "the objectives of the conspiracy still remained to be met" and the subsequent statement of the remaining conspirator was "seen as an attempt to facilitate the planned future deliveries").
 
 
 26
 DeLaneuville argues that rather than the statement being made in furtherance of the conspiracy, "the government was fishing through their confidential informant for information on the person they had just arrested." In the telephone conversation, before the portion quoted above referring specifically to DeLaneuville, the undercover informant told Lions that the deal had gone fine, but that there was a shortage of cash. After obtaining Lions' assurance as to the money, the undercover informant asked about the other four pounds of methamphetamines that Lions had promised to purchase, and obtained an assurance that Lions intended to honor the promise. Then the undercover informant asked about DeLaneuville, "who is that guy, Chuck?" Viewed in its entirety, the conversation satisfies the "in furtherance" requirement, because reassurance of a nervous participant is a natural and ordinary part of furthering a transaction, whether legal or illegal.
 
 
 27
 We have noted that "[m]ere conversations between coconspirators, or merely narrative declarations among them, are not made 'in furtherance' of a conspiracy." United States v. Yarbrough, 852 F.2d 1522, 1535 (9th Cir.), cert. denied, 488 U.S. 866 (1988). But statements made to prompt further action on the part of conspirators are admissible under 801(d)(2)(E), as are those made to "reassure" members of a conspiracy's continued existence. Statements made to allay a coconspirator's fears are admissible. Statements made to keep coconspirators abreast of an ongoing conspiracy's activities also satisfy the "in furtherance" requirement. The trial judge could find without clear error that Lions' statements represented all of these. Because Lions' statements satisfy Rule 801(d)(2)(E), the admission of those statements did not violate DeLaneuville's rights under the Confrontation Clause of the Sixth Amendment. "The Court of Appeals held that the requirements for admission under Rule 801(d)(2)(E) are identical to the requirements of the Confrontation Clause, and since the statements were admissible under the Rule, there was no constitutional problem. We agree." Bourjaily, 483 U.S. at 182.
 
 IV. Jury Instruction
 
 28
 DeLaneuville objects to the trial court's instruction that stated: "punishment ... is a matter exclusively within the province of the court or judge, and should never be considered by the jury in any way, in arriving at an impartial verdict as to the guilt or innocence of the accused." DeLaneuville argues that this instruction is obsolete because the sentencing guidelines have "removed" the court's discretion over sentencing.
 
 
 29
 The trial judge has discretion in the formulation of instructions, United States v. Linn, 880 F.2d 209, 217 (9th Cir.1989), and we find no abuse of discretion here. The point of the instruction, that the jury is to concern itself with whether the defendant is guilty and not with what his punishment may be, remains correct. Although the sentencing guidelines have reduced the court's sentencing discretion, they have not transferred the sentencing decision from the judge to the jury.
 
 
 30
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3