**UNITED STATES of America, Appellee,**

v.

**Michael Robert BECK, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Wayne Anthony CARLSON, Appellant.**

**Nos. 81–1379, 81–1380.**

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 12, 1981.

Decided Nov. 5, 1981.

Rehearing and Rehearing En Banc
Denied Dec. 1, 1981.

---

John M. Lee, Sheryl Ramstad Hvass, Thorwald H. Anderson, argued, Asst. U. S. Attys., Minneapolis, Minn., for appellee.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

Government agents seized one pound of marijuana upon delivery by Jay Kobelarczyk, an intermediary for defendants in this action, to an undercover officer. They also seized forty-six pounds of marijuana from the residence of Wayne Anthony Carlson and Michael Robert Beck, defendants and appellants. Based on this evidence, the Government indicted and convicted both defendants for unlawful possession with intent to distribute forty-six pounds of marijuana, in violation of 21 U.S.C. § 841(a)(1) (1976).[1] Carlson was also convicted of distributing one pound of marijuana to the undercover agent in violation of the same statute. The court convicted Carlson after a bench trial[2] on stipulated facts, while a jury convicted Beck.

Both appellants challenge the admissibility of marijuana and other evidence taken from the premises on the ground that the Government obtained it as the result of the officers' illegal entry to "secure the premises" until one officer could obtain a search warrant. For the reasons set out below, we have serious doubts that exigent circumstances existed to justify the warrantless entry into the Carlson-Beck residence. The officers conducted the search and seizure that produced the forty-six pounds of marijuana pursuant to a warrant based on information untainted by illegal entry, however, and therefore we affirm the convictions of both defendants.

I. *Background.*

Prior to August 4, 1980, Deputy Steven Tobler of the Hennepin County, Minnesota, sheriff's office, attempted to negotiate an

Jack S. Nordby, Minneapolis, Minn., for appellants.

1. Section 841(a)(1) makes it unlawful to knowingly and intentionally distribute, dispense, or possess with intent to distribute or dispense a controlled substance. Both defendants are chargeable as principals for aiding in the commission of the offense. 18 U.S.C. § 2(a) (1976).

2. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

undercover drug transaction with Jay Kobelarczyk. Kobelarczyk told Tobler that his sources of marijuana were "Mike" and "Wayne," but refused to give their last names or address. On August 4, Kobelarczyk telephoned Tobler stating that Mike, who had just returned to Minneapolis, held ten pounds of marijuana for Tobler. Kobelarczyk mentioned that Mike and Wayne kept the drugs at their home but would not reveal the address. Tobler made arrangements with Kobelarczyk to complete the purchase of the ten pounds of marijuana.

Tobler picked up Kobelarczyk and followed his directions to the undisclosed destination. The parties understood that the transfer of the drug would be made in the following manner. Upon reaching the destination, Kobelarczyk would obtain a one-pound package and a small sample in a plastic bag. If Tobler approved of the quality, Kobelarczyk would deliver the other nine pounds upon receipt of the purchase price of $450 per pound. Tobler brought along $4,500 in "flash" money, but did not intend to pay for any of the marijuana. Tobler had arranged for cooperation from other police and federal officers, who followed him and Kobelarczyk in several vehicles. A hidden radio device in his automobile transmitted all conversations to the officers.

Kobelarczyk directed Tobler to park his automobile in an alley by the garage at the rear of a residence at 3338 Lyndale Avenue North in Minneapolis. Kobelarczyk entered the residence after telling Tobler that his source would watch the transaction from the upstairs window. When Kobelarczyk returned with the marijuana, Tobler signaled the other officers and arrested Kobelarczyk.

As the waiting officers ran down the alley to help Tobler arrest Kobelarczyk, Deputy Anderson saw someone watching from an upstairs window. He yelled this information to the other officers and several of them entered the residence through the rear door. Drug Enforcement Administration Agent Love received notice of the arrest over his radio. Wearing a portable radio and his service revolver, he placed his badge on his jacket and approached the front door. Love saw a person standing at the doorway push the front door forward trying to close it to the officer. Love yelled his identity and entered the house where he, and the officers who had entered simultaneously from the rear, arrested the two occupants, Carlson and Michael Avola.[3]

After arresting Kobelarczyk, Tobler drove into downtown Minneapolis to obtain a search warrant for the residence. He returned two hours later with the warrant.

When Tobler arrived, he gave Carlson a copy of the warrant and advised him of his *Miranda* rights. In response to questioning, Carlson told police they would find the marijuana in the southwest bedroom, which belonged to Beck. The search of that room uncovered forty-six pounds of marijuana, and several items of personal property belonging to Beck.

II. *Issues.*

Both appellants contend that the trial court erred in refusing to suppress evidence seized from the Carlson-Beck residence. Specifically, they argue that the officers' failure to obtain a warrant before entry, or to establish exigent circumstances, invalidated the entry. In addition, appellants contend the officers' failure to announce their presence and purpose invalidated the entry. Finally, Beck and Carlson argue that no probable cause justified issuance of the warrant.

In addition to these fourth amendment claims, Beck argues that the court erred in admitting Carlson's postarrest statements implicating Beck because these statements were not made in furtherance of a conspiracy. He also argues that the Government produced insufficient evidence to support his conviction. Finally, Beck argues that the court committed plain error in instructing the jury that the attorney's function is to present evidence on behalf of his client when, as in this case, Beck had not testified.

---

**3.** Avola was subsequently charged with being in a disorderly house.

III. *Discussion.*

■ First, we harbor serious doubts that exigent circumstances justified this warrantless entry. To justify a warrantless entry based on imminent destruction of evidence, factual circumstances must demonstrate a sufficient basis for an officer to believe somebody in the residence will likely destroy evidence. Officer Anderson saw a face in the window disappear from sight. Without more, this observation is essentially neutral and, therefore, does not constitute exigent circumstances.

The incident involving Agent Love presents a different case. The occupant who closed the door took affirmative action consistent with a demonstration of guilty knowledge. Agent Love, therefore, might reasonably interpret this conduct as hostile action justifying his immediate entry to preserve any evidence. The issue is close.

■ We need not determine whether exigent circumstances existed on this record, however, because the police uncovered the crucial evidence during a search conducted pursuant to a valid search warrant. The trial court need not suppress evidence gained through an independent source, notwithstanding any prior illegality. *See United States v. Chamberlin,* 644 F.2d 1262, 1269 (9th Cir. 1980); *United States v. Brookins,* 614 F.2d 1037, 1041 (5th Cir. 1980); *United States v. Basey,* 613 F.2d 198, 203 (9th Cir. 1979), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 274 (1980); *United States v. Stover,* 565 F.2d 1010, 1013 (8th Cir. 1977). Neither the finding that defendant Carlson intentionally distributed marijuana, nor that he possessed forty-six pounds with intent to distribute rests on

anything garnered while the agents waited for the search warrant. The first count rests on the preentry transaction between Tobler and Kobelarczyk, while the second count depends on evidence obtained pursuant to the valid search warrant. Similarly, the illegal entry did not yield the evidence to which defendant Beck objects. The search warrant that uncovered the forty-six pounds of marijuana used to convict Beck did not rest on the entry at all. The affidavit in support of the search warrant recounts only facts prior to the entry of defendants' home.[4]

■ Beck contends that the court erred in admitting Carlson's postarrest statements identifying Beck as the occupant of the room where officers found the forty-six pounds of marijuana. Beck, however, waived his assertion of error as to these statements by failing to object at trial. *See United States v. Massey,* 594 F.2d 676, 679 n.2 (8th Cir. 1979); *United States v. Davis,* 557 F.2d 1239, 1246 (8th Cir.), *cert. denied,* 434 U.S. 971, 98 S.Ct. 523, 54 L.Ed.2d 461 (1977); *United States v. Librach,* 536 F.2d 1228, 1231 n.5 (8th Cir.), *cert. denied,* 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976). Any error here is not so great that it amounts to plain error. *United States v. Cheyenne,* 558 F.2d 902, 906 (8th Cir.), *cert. denied,* 436 U.S. 957, 98 S.Ct. 486, 54 L.Ed.2d 316 (1977); *Chubet v. United States,* 414 F.2d 1018, 1021 (8th Cir. 1969).[5]

■ Beck's claim that the evidence is insufficient to support the verdict also lacks merit. Viewing the evidence in the light most favorable to the Government, *see United States v. Williams,* 604 F.2d 1102, 1118 (8th Cir. 1979); *United States v. Col-*

---

4. While the affidavit does describe an incident that occurred after the entry, it is recounted as if it occurred before the arrest of Kobelarczyk. The magistrate's report, adopted by the district court, however, specifically found that this incident was not necessary to a finding of probable cause. The magistrate's finding of probable cause deserves great deference. *See Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969); *United States v. Christenson,* 549 F.2d 53, 56 (8th Cir. 1977). Deputy Tobler's observation of contraband brought out of the residence, and Kobelar-

czyk's statement against penal interest that he would get the remaining nine pounds from his source inside the house, provide sufficient information on which to base the finding. *See United States v. Golay,* 502 F.2d 182, 186–87 (8th Cir. 1974).

5. Moreover, the statements did not constitute the fruits of the alleged illegal entry inasmuch as the search warrant already had been served and the officers had therefore properly entered the premises.

*lins*, 552 F.2d 243, 245 (8th Cir.), *cert. denied*, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977), this evidence amply supports the finding of Beck's guilt. This is not a case of guilt by association. *See United States v. Frol*, 518 F.2d 1134, 1137 (8th Cir. 1975). Police found a large amount of marijuana in the bedroom containing personal letters, car loan papers, a prescription medicine container, and various other items of identification, all bearing the name of Michael Beck. In addition, the officers found military uniforms with Beck's name hanging in the bedroom closet. Finally, Kobelarczyk testified that Beck and Carlson engaged in drug trafficking, and that they lived together at 3338 Lyndale Avenue North. All of this evidence was lawfully obtained and together constitutes sufficient evidence to support a guilty verdict.

■ The record does not demonstrate that the court's instruction on the function of counsel amounted to plain error requiring reversal. The instructions fully set out the burden of the Government. The court repeatedly instructed the jury that the Government had the burden of proof beyond a reasonable doubt. Viewing the instructions as a whole, therefore, we cannot say that the reference to the trial counsel's function shifted the burden of proof from the Government to the defendant. *See Brouillette v. Wood*, 636 F.2d 215, 218 (8th Cir. 1980), *cert. denied*, 450 U.S. 1044, 101 S.Ct. 1766, 68 L.Ed.2d 243 (1981).

Affirmed.

ROSS, Circuit Judge, concurring.

I concur in the result reached in the majority opinion for the reasons stated therein and for one additional reason. I am satisfied that there were exigent circumstances present which justified the limited immediate entry into the house. Anderson saw a man at the window who presumably had furnished the marijuana to Kobelarczyk and had then seen Anderson arrest Kobelarczyk. Anderson then yelled this information to Love. In my opinion, when Love had this information and saw a person try to close the door, a reasonable and almost inescapable conclusion was that evidence was about to be destroyed. Since the entrance was only for the purpose of securing the premises pending obtaining a search warrant, the intrusion was relatively minor. *See United States v. Acevedo*, 627 F.2d 68 (7th Cir. 1980).