UNITED STATES of America, Appellee,

v.

Daniel Dean HEPPERLE, Appellant.

No. 86–1675–SI.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 8, 1986.

Decided Feb. 10, 1987.

Rehearing Denied March 25, 1987.

Jon B. Schuster, Des Moines, Iowa, for appellant.

Joseph S. Beck, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before McMILLIAN, BOWMAN, Circuit Judges, and CONMY,* District Judge.

CONMY, District Judge.

Daniel Dean Hepperle appeals his convictions for interstate transportation of stolen property and concealing stolen property which had moved in interstate commerce, knowing it to be stolen. 18 U.S.C. §§ 2314, 2315. Mr. Hepperle alleges on appeal that searches by law enforcement officials violated his fourth amendment rights, and that the fruits of those searches must therefore be suppressed. Mr. Hepperle also contends that the evidence is insufficient to support the verdict.

*Facts*

Daniel Goode raises birds in rural Selma, Alabama, and sells them commercially. In September, 1985, appellant and his brother visited Goode's farm to examine and pur-

chase a baby macaw for use in nutrition research. Goode testified that appellant closely observed the physical layout of the farm and the aviary, noting the location of each building and each macaw pair within the aviary. Appellant's observations were dictated into a tape recorder which appellant carried. Appellant's brother denied this testimony.

Sometime during the late evening of January 2, or early morning of January 3, 1986, three macaw pairs were stolen from Goode's aviary: one buffons pair, one scarlet pair, and one green wing pair. Goode's neighbors reporting having seen a tan or white station wagon with brown siding and an orange tarp in the rear passing through the neighborhood on the afternoon of January 2. The vehicle had not been seen in the vicinity before and was considered suspicious. A local deputy sheriff investigated the scene, and reported finding tire tracks with mismatched treads—five treads in the front and seven treads in the rear.

Goode notified various bird dealers of the theft. On January 6, 1986, one of these dealers contacted him and informed him that a pair of buffons macaws and green wing macaws were advertised as being for sale in the Des Moines, Iowa, newspapers. On January 7, 1986, another dealer notified FBI Special Agent Oxler that appellant had contacted him and indicated that he had a green wings pair and a buffons pair for sale, and that he had just sold a scarlet macaws pair. On January 8, 1986, FBI Special Agent Coppinger applied to the magistrate in Des Moines, Iowa, for warrants to search appellant's place of business and residence. The magistrate issued the warrants at 5:10 p.m. on January 8, 1986. Special Agent Coppinger telephoned law enforcement officials in Ames, Iowa, and notified them that the warrants had issued. Those law enforcement officials proceeded immediately to appellant's business and residence to commence their searches.

* The Honorable Patrick A. Conmy, United States District Court for the District of North Dakota, sitting by designation.

Appellant and his brother were present at appellant's business address, and objected to the search. Appellant asked to see a copy of the warrant; he was informed that the warrant was on its way from Des Moines and would arrive before the officer left the premises. Appellant's brother stated that he would not allow the officers to search until the warrant arrived; the officer indicated that if appellant's brother interfered, he would be arrested. The officers then commenced searching and seized various business records. The warrant arrived, and the inventory was completed prior to the officer's departure from the scene. Appellant received a copy of the warrant and the inventory.

Meanwhile, other officers had identified themselves to Clemencia Hepperle, appellant's wife, and commenced searching appellant's residence. Mrs. Hepperle testified that she was "scared and intimidated," but that she consented to the officers' entry and search. The officers at the residence contacted officers at the business, and notified them that Mrs. Hepperle seemed to have some difficulty with the English language, and that perhaps appellant should talk with her. Appellant did talk with Mrs. Hepperle; officers informed appellant that he was free to go to his residence to be with her if he so desired, but he refused.

The officers found a buffons pair and a green wing pair of macaws, as well as a single scarlet macaw at appellant's residence. Goode identified the pairs as his, but stated that the scarlet macaw was not his; the scarlet pair was later recovered from R.D. Buckingham, who had traded appellant the single scarlet macaw and some cash for Goode's scarlet pair.

The warrant arrived at the residence while the officers were searching; Mrs. Hepperle testified that she read and understood the warrant and inventory, and that she signed the inventory.

The officers then met at the local police headquarters. One or more of the officers indicated that they had observed a station wagon behind appellant's residence that matched the description provided by Goode of the vehicle observed by neighbors on January 2, 1986. Agent Oxler testified that, after considering the cumulation of seized evidence, and that the appellant was now alerted, they decided to seize the vehicle.

A subsequent search of the vehicle rendered soil samples, various road maps, two orange carpets, mismatched tire treads (five in front, seven in back), a fishing net, wire cutters, and a large white feather.

*Search and Seizure—Warrant*

The fourth amendment protects the right of the person to be free from unreasonable searches. The fundamental inquiry in considering fourth amendment issues is whether the search and seizure was unreasonable under all the circumstances. *United States v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977).

Rule 41, Federal Rules of Criminal Procedure, outlines procedural requirements relating to search warrants. Section 41(d) provides:

The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt at the place from which the property was taken. The return shall be made promptly and shall be accompanied by a written inventory of any property taken. The inventory shall be made in the presence of the applicant for the warrant and the person from whose possession or premises the property was taken, if they are present, or in the presence of at least one credible person other than the applicant for the warrant or the person from whose possession or premises the property was taken, and shall be verified by the officer. The federal magistrate shall upon request deliver a copy of the inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant.

Fed.R.Crim.P. 41(d).

Appellant argues that it was unreasonable for law enforcement officials to com-

mence the searches prior to the arrival of a warrant, and that this unreasonableness renders the searches invalid, requiring that the "fruits" be suppressed.

The court disagrees. While it may be foolhardy to proceed in the absence of the physical presence of the warrant, it is not unconstitutional. Nothing in the fourth amendment or Rule 41 requires that the search warrant be physically present prior to commencing the search. *Katz v. United States*, 389 U.S. 347, 355 n. 16, 88 S.Ct. 507, 513 n. 16, 19 L.Ed.2d 576 (1967); *United States v. Marx*, 635 F.2d 436, 441 (5th Cir.1981) (failure to deliver copy of search warrant to party whose premises were searched until day after search did not invalidate search in absence of showing of prejudice; violations of Rule 41(d) essentially ministerial in nature); *United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir. 1971) (absence showing of prejudice, irregularities in Rule 41(d) procedures do not void an otherwise valid search); *United States v. Woodring*, 444 F.2d 749, 751 (9th Cir.1971) (Rule 41(d) requires officers to serve copy of warrant upon person searched, but does not require that this be done before search commences).

Appellant argues that this court has never specifically addressed the issue, but has implied that any evidence discovered prior to the arrival of the warrant must be suppressed. *United States v. Williams*, 737 F.2d 735 (8th Cir.1984).

In *Williams* appellant's house was under surveillance when a search warrant was issued. The surveillance officers entered the house prior to arrival of the warrant, conducted an initial security search, and then waited for the warrant to arrive before conducting a thorough search. 737 F.2d at 739. This court ruled that *even if* the prior warrantless entry was invalid, the only evidence that could be suppressed was the evidence discovered prior to the arrival of the warrant. *Id.* at 740 (following *United States v. Beck*, 662 F.2d 527 (8th Cir. 1981) (where search independent of initial warrantless entry, fruits of search need not be suppressed)). In *Williams*, nearly all of the evidence against appellant was discovered after arrival of the warrant and was therefore admissible even under appellant's theory.

This court did not specifically rule on the issue in *Williams* because it was unnecessary to the decision. This court now holds that law enforcement officials are not constitutionally required to present a copy of the search warrant prior to commencing a search, so long as the previously issued warrant is presented before the officers vacate the premises.

This court also rejects appellant's arguments regarding the search of his residence. Appellant argues that Mrs. Hepperle did not understand English well, that she was frightened and confused, and that the officers acted unreasonably by searching the residence.

It is generally common for a person to feel frightened, confused, or intimidated when confronted by law enforcement officials who demand to search the person's private residence. This court knows of no constitutional duty on the part of the officers to assuage the individual's fears. Appellant's argument regarding Mrs. Hepperle's language skills seem to go to the validity of her consent to the officers' entry and search. The argument misses the point, however—since a valid warrant had issued, the officers did not need Mrs. Hepperle's consent.

The conduct of searches, with a warrant "to arrive later" should be discouraged. The fact that evidence will not be suppressed does not mean that the court encourages situations having a greater potential for confrontation and violence. This court finds only that no constitutional violation occurs when officers commence a search prior to the actual physical arrival of the warrant.

*Warrantless Search and Seizure*

Appellant also challenges the officers' warrantless search and seizure of his automobile.

■ The "automobile exception" to the warrant requirement of the fourth amendment authorizes warrantless searches of automobiles where the officers have probable cause to believe that contraband or evidence of criminal activity is located therein, and where exigent circumstances exist. *California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

Appellant argues that no exigent circumstances existed because the automobile was in disrepair and was incapable of being moved.

The Supreme Court has consistently recognized ready mobility as one of the bases for the automobile exception. *Carney,* 105 S.Ct. at 2069; *Ross,* 456 U.S. at 806, 102 S.Ct. at 2163; *South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976) (automobile's mobility "creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible").

■ Ready mobility is not, however, the only basis for the exception. A person's reduced expectation of privacy in his vehicle relaxes the warrant requirement. "Even in cases where an automobile is not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception." *Carney,* 105 S.Ct. at 2069. *Cf. Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (warrantless search of disabled vehicle not unconstitutional where officers had taken custody of vehicle for safety reasons, and search was "standard procedure"); *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) (car impounded when identified as "getaway car;" subsequent warrantless inventory search not unconstitutional); *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967) (car impounded as part of forfeiture proceedings, subsequent search justified by safety reasons).

■ In this case, the vehicle's alleged immobility was not visibly apparent. The fourth amendment does not require that officers ascertain the actual functional capacity of a vehicle in order to satisfy the exigency requirement. The test is reasonableness under all the circumstances. This court finds that it was reasonable in this case to assume that the vehicle was readily mobile.

The probable cause requirement was also satisfied. The vehicle matched the description of a vehicle thought to be involved in the theft. The officers had recovered macaws from appellant's residence that Goode identified as his.

This court finds that the search and seizure of the automobile and the evidence discovered therein was reasonable under all of the circumstances, and was not in violation of the fourth amendment.

*Sufficiency of the evidence*

■ Appellant asserts that the evidence is insufficient as a matter of law to support his conviction. When considering this claim, the court must determine whether, in considering the evidence in the light most favorable to the government, and giving the government the benefit of all reasonable inferences that can logically be drawn, the evidence was such that a reasonable-minded jury must have entertained a reasonable doubt as to the government's proof on an essential element. *United States v. Noibi,* 780 F.2d 1419, 1422 (8th Cir.1986).

This court has reviewed the record and finds that the evidence was more than sufficient to sustain the verdict.

Appellant's conviction is affirmed.