529 So.2d 1282 (1988)
The STATE of Florida, Appellant,
v.
Alejandro MAYA and Victor Espinosa, Appellees.
No. 86-2234.
District Court of Appeal of Florida, Third District.
August 30, 1988.
*1283 Robert A. Butterworth, Atty. Gen. and Nancy C. Wear, Asst. Atty. Gen., for appellant.
Frederick E. Graves, Fort Lauderdale, for appellees.
Before SCHWARTZ, C.J., and BASKIN and FERGUSON, JJ.
SCHWARTZ, Chief Judge.
The State appeals from an order in a prosecution for drug trafficking which suppressed the contraband on the ground that there was no probable cause supporting the warrantless search which revealed it. We find to the contrary, and, as a separate ground for reversal as to one of the two co-defendants, we conclude that he lacks "standing" to challenge the seizure.

I.
The set of facts which gave rise to this cause is relatively simple, uncontradicted (since only the police officers testified at the motion to suppress) and, unfortunately, typical of innumerable such events in our drug-ridden society. It began at 11:30 A.M., March 10, 1986, when an otherwise unidentified person  who was an acquaintance of his, but had not given him information before  called Officer Behar of the Miami Police Department concerning an impending drug transaction. He stated that within an hour a "kilo deal"  the transfer of a kilogram of cocaine  would take place at the corner of N.W. 16th Avenue and 1st Street in Miami. The caller said that it would involve a Latin male wearing a green shirt and driving a Ford Granada. There was no other information.
Acting upon the tip, Officer Behar dispatched four other officers to the designated scene. Their surveillance through binoculars of the location revealed immediate confirmation of the tip. Within forty minutes after the phone call, a Latin male, who turned out to be the defendant-appellee Espinosa, wearing a green shirt, drove his Ford Granada into the area. He parked and remained there for few a minutes until another man, the defendant Maya, approached him on foot. After a short conversation, Maya left and returned very soon after that driving a Ford Mustang, which he parked immediately behind Espinosa's Granada. Maya handed his car keys to Espinosa who opened the trunk of the Mustang and took out a brown grocery bag. To the officers' observation, he opened the bag, pulled out an orange Tupperware-type[1] plastic container of a size consistent with the quantity of contraband *1284 described,[2] and then placed it back in the bag. He put the container in the trunk of the Granada and returned the Mustang keys to Maya. Both were about to leave when the officers moved in and arrested both Espinosa and Maya for possession of contraband. At the motion to suppress the kilogram of cocaine which, to no one's surprise, was revealed by the post-arrest search of Espinosa's trunk and the bag and container, the lead arresting officer aptly testified as to the basis of the arrest:
Q. And then, it is at that point in time you made your arrest?
A. Both subjects were in the vehicles, and from what I could tell, they were getting ready to leave. At that point, I decided to move in.
Q. Okay. You saw  you did not see them committing anything illegal, did you, at that point in time?
A. True. In my experience as a police officer, I felt confident that a kilo deal  where a kilo was exchanged at that location.
Q. That was your hunch or guess?
A. That was my thought and suspicion.
Q. You had no reason to believe that, did you?
A. With the information that I obtained through the telephone call, together with the occurrences at that location, I felt very confident that indeed what was transpiring was an exchange of a kilo of cocaine.
Q. So then, you were basing this belief that a criminal transaction was occurring on what the informant had said to another person?
A. That's correct.
Q. Okay. Nothing outside of that transaction was anything other than what could have been a grocery bag being transferred from one vehicle to another, correct, a grocery bag with some Tupperware, that's all you could see?
A. Without the information received through the anonymous phone call giving me these particular items, I may have not noticed.
Q. All right, sir. Let me ask you this. If you had not gotten the information that you got from the confidential informant, would you have arrested both those individuals just on those observations?
A. If I was watching the particular location for drug activity, I would have noticed and I would have paid particular attention to the person more. You would be able to see certain things you've seen in the past that are consistent to that of a drug deal. [e.s.]
Q. Based on the observations that you saw there, without the information you got from the confidential informant, you would have felt that was satisfactory to go arrest a citizen for a criminal offense?
A. No.
Notwithstanding this testimony, the trial judge found that there was no probable cause to believe that the Tupperware contained contraband to justify the defendants' arrest. He also held, even though Maya had transferred the package from his car to Espinosa's, that he retained the ability to challenge the constitutionality of the seizure. We disagree with both rulings.

II.
Of course, the primary issue in this case is the existence of probable cause *1285 to believe that there were or had been drugs in the defendants' possession upon which to base their arrest.[3] In Skelton v. State, 349 So.2d 193, 194 (Fla. 3d DCA 1977), we restated the familiar generalized standard for making that determination in a case such as this:
Probable cause to arrest exists where a reasonable man, having the specialized training of a police officer, in reviewing facts known to the arresting officer prior to the actual time of arrest, would come to the conclusion that a felony is being or has been committed by the person to be arrested. State v. Profera, 239 So.2d 867 (Fla. 4th DCA 1970).
* * * * * *
Under the totality of the circumstances, Officer Cantillo had probable cause to believe that the packets contained cannabis (marijuana) and a narcotics sale was in progress.
Skelton, 349 So.2d at 194; accord, e.g., Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); United States v. Davis, 458 F.2d 819 (D.C. Cir.1972) (circumstances must be viewed in light of officers' experience and training); State v. Melendez, 392 So.2d 587 (Fla. 4th DCA 1981). The rule is not different when, as in this case, incriminating information supplied by an informant is in part relied upon to justify a probable cause conclusion. This was established in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), in which the Supreme Court formally rejected the so-called Aguilar-Spinelli two-pronged test in which the informant's individual reliability and a showing of the basis of his knowledge were said to be prerequisites to reliance upon his information. But see State v. Rizo, 463 So.2d 1165 (Fla. 3d DCA 1984); Terrell v. State, 429 So.2d 778 (Fla. 3d DCA 1983) (informant's reliability and knowledge remain important factors in assessing probable cause). Instead, the "totality of the circumstances" test, see Skelton, 349 So.2d at 194, under which all the pertinent factors must be taken into consideration, is the applicable one. Under that view  and even, we suspect, applying the prior test[4]  the circumstances below were more than sufficient to constitute probable cause.
We reach this conclusion in much the same way that the arresting officers did:[5] by drawing upon a combination of both what they were told by a person who obviously knew what he was talking about, and their assessment of what they observed as independently consistent with a drug transaction and with the content of that tip. Thus, even if  as is surely true  the tip were alone insufficient[6] and if, as may be less clear, their observations were not enough, but see P.L.R. v. State, 455 So.2d 363 (Fla. 1984), cert. denied, 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 349 (1985); State v. James, 526 So.2d 188 (Fla. 3d DCA 1988); Council v. State, 442 So.2d 1072 (Fla. 3d DCA 1983), together they made the case. In a manner of speaking, the two elements of probable cause were in a synergistic relationship with each other, with the features of each validating the reliability of the other, see Illinois v. Gates, 462 U.S. at 213, 103 S.Ct. at 2317, 76 L.Ed.2d at *1286 527, as to the key issue  that drugs were involved in the transaction:
a. The crucial aspect of the tip, as to the existence of cocaine, was confirmed both by the immediately obvious truthfulness of the various details of time, location, dress, and vehicle described and, more important, by the officers' observation that the manner in which the men acted was entirely characteristic of a drug transaction in progress. Hopkins v. State, 524 So.2d 1136 (Fla. 1st DCA 1988); Barfield v. State, 396 So.2d 793 (Fla. 1st DCA 1981); United States v. Lucas, 778 F.2d 885, 887 n. 2 (D.C. Cir.1985) (In finding probable cause under Gates, "the corroboration of details of an informant's tip by independent police work is of significant value."); see Bussey v. State, 528 So.2d 955 (Fla. 3d DCA 1988).
b. Turning the coin over, the ultimate conclusion that what the officers saw was indeed a drug transaction was validated by the obviously not coincidental tip that it was just that. See P.L.R. v. State, 455 So.2d at 363.
Thus, the co-existence of both sources of information makes a finding of probable cause inevitable.
This conclusion is in accordance with LaFave's analysis of the problem. 1 W. LaFave, Search and Seizure § 3.3(f), at 692 (2d ed. 1987). As is not uncommon with respect to this authority, we can do no better than to quote his conclusion and refer to some of the decisions cited in support:
Yet another type of case is that in which it cannot quite be said that "probable cause is established without necessary resort to the hearsay," but where this other information standing alone is nonetheless highly suspicious. May it be said in such a case that the informant's story, albeit lacking a showing of the basis of knowledge, may be taken into account for the purpose of supplying the "little bit more" which is needed to elevate this other information up to the level of probable cause? Such cases are easier than Gates; the answer is unquestionably yes. As stated in Spinelli v. United States, [393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)] though "the informant's tip  even when corroborated to the extent indicated  was not sufficient to provide the basis for a finding of probable cause," it does not follow "that the tip was so insubstantial that it could not properly have counted in the magistrate's determination." Of the Supreme Court decisions earlier summarized, Ker v. California, [374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963)] is illustrative. A reliable informant told police Ker had been purchasing marijuana from Murphy. Surveilling agents saw Ker meet Murphy, a known marijuana dealer, under circumstances similar to those in which Murphy was known to have made a marijuana sale to another person a day earlier. The Court was unwilling to say that this observation alone amounted to probable cause, but it did give rise to a "strong suspicion" which was raised to probable cause when considered with the imperfect informer's tip. A number of the lower court decisions which are based upon the questionable theory that corroboration may remedy an otherwise unestablished basis of knowledge could more readily be explained on the theory just stated.
* * * * * *
Though there are many lower court decisions utilizing corroboration as a cure for both veracity and basis of knowledge deficiencies, some of them may be more readily explained on the other bases previously discussed... . Sometimes ... observations and other facts are highly suspicious and come very close to establishing probable cause, thus justifying use of an inadequate informant's tip to bridge the gap. And as to the basis of knowledge part of the cases now under discussion, here again courts sometimes rely upon the corroboration when it would instead be more logical to infer the *1287 requisite knowledge from the self-verifying details provided. (footnotes omitted)
See 1 W. LaFave, supra, at 692-95; People v. Williams, 189 Colo. 311, 541 P.2d 76 (1975) (informant said defendant would be a certain place in certain car in possession of heroin; defendant arrived as predicted, but in addition police observed him drive slowly through aisles of shopping center parking lot as if looking for someone, and when defendant saw police approaching he took a bundle from his shirt pocket and threw it on the floor of the car); State v. Delmonaco, 194 Conn. 331, 481 A.2d 40 (1984) (informants said defendant selling drugs; surveillance by officers revealed defendant in company of known drug dealer and another person injecting drugs in defendant's room), cert. denied, 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984); Manee v. State, 457 So.2d 530 (Fla. 2d DCA 1984) (employer's security officer gave tip that defendant selling drugs at company parking lot; police observed defendant in area engaging in suspicious activities, carrying distinctively rolled paper bag used only in narcotics transactions), pet. for review denied, 464 So.2d 556 (Fla. 1985), cert. denied, 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985); State v. Perry, 234 Ga. 842, 218 S.E.2d 559 (1975) (informant said defendant at certain place in certain car to sell marijuana; police found defendant there as predicted, noted she was a person previously arrested for possession of marijuana and that when she became aware of the police she hastily secreted a bag under her clothing); State v. Erler, 207 Mont. 88, 672 P.2d 624 (1983) (tip that drugs would be brought into country in described car and from certain residence, such car came in and found to obtain drugs; corroboration of that crime a basis for believing part of story re: residence); State v. Willis, 61 N.C. App. 23, 300 S.E.2d 420 (1983) (informant said defendant would deliver packages of heroin to several people near named restaurant; people in that area saw defendant in car running without headlights, defendant looked back at police, threw small package out of car and then sped off), modified and aff'd, 309 N.C. 451, 306 S.E.2d 779 (1983); Commonwealth v. Jones, 506 Pa. 262, 484 A.2d 1383 (1984) (court notes informant's tale of minor importance, serving only to confirm that acts observed by surveillance police were drug sales); Angulo v. State, 727 S.W.2d 276 (Tex. Crim. App. 1987) (car described in great detail and said to contain narcotics arrived at premises as predicted; court stresses these premises the site of much drug activity, established by prior surveillance).
For these reasons, we conclude that the facts known to the officer together require an affirmative answer to the "commonsense,[7] practical question [of] whether there [was] `probable cause'" to believe that an offense was being committed. Gates, 462 U.S. at 230, 103 S.Ct. at 2328, 76 L.Ed.2d at 543.

III.
Quite apart from this conclusion, we find that Maya is in any case unable to assert constitutional error. When he handed his keys and surrendered the bag containing the cocaine to Espinosa  resulting in the transfer of the bag to the latter's vehicle  Maya did not maintain an expectation of privacy as to Espinosa's car or the contraband which had been placed there. That transfer of possession resulted in an inability to invoke any fourth amendment rights with respect to the items seized. Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); see State v. Terzado, 513 So.2d 741 (Fla. 3d DCA 1987); State v. Oliver, 368 So.2d 1331 (Fla. 3d *1288 DCA 1979), cert. dismissed, 383 So.2d 1200 (Fla. 1980); see also California v. Greenwood, ___ U.S. ___, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988).
In accordance with these views, the order under review is reversed with directions to deny the motions to suppress.
Reversed.
NOTES
[1] It seems from the decided cases that, much like American Tourister luggage in the case of larger quantities, e.g., Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), Tupperware is a favorite container for smaller amounts of contraband. United States v. Williams, 737 F.2d 735 (8th Cir.1984); United States v. One 1979 Porsche Coupe, VIN XXXXXXXXXX, 709 F.2d 1424 (11th Cir.1983); United States v. Snaith, 666 F. Supp. 645 (D.Vt. 1987); Smith v. State, 737 S.W.2d 933 (Tex. Crim. App. 1987).

Although the use of such a container does not constitute probable cause in itself, it may be a pertinent factor in the mix of circumstances giving rise to a founded suspicion or probable cause. See Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); Caplan v. State, 531 So.2d 88 (Fla. Case 1988); P.L.R. v. State, 455 So.2d 363 (Fla. 1984), cert. denied, 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 349 (1985).
[2] Its precise dimensions are 6 1/2" X 9" X 4".
[3] There is no doubt, if this is the case, that the ensuing search of Espinosa's trunk and the drug container was valid both as incident to the arrests, see State v. James, 526 So.2d 188, 190-91 (Fla. 3d DCA 1988), and as a permissible vehicle search under United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).
[4] We point out that LaFave's discussion and supporting authority upon which this opinion heavily relies, 1 W. LaFave, Search and Seizure § 3.3(f) (2d ed. 1987), is largely based upon a pre-Gates analysis that even a tip which is, like this one, totally lacking on its face as to each prong of Aguilar-Spinelli, may be self-validated in both respects by the subsequent confirmation of the information.
[5] We again observe, as we have in Harper v. State (Fla. 3d DCA Case no. 86-2853, opinion filed, August 30, 1988), that the conclusions and conduct of the police officers conducting their affairs and enforcing the law as reasonable persons on the scene exactly coincide with what we deem the constitution permits.
[6] See supra note 4.
[7] The trial judge is said to have observed, we assume facetiously, that the plastic dish may well have contained arroz con pollo. But the determination of probable cause does not turn on whether an innocent explanation can possibly be conjured up from what are obviously incriminating circumstances. Rather, it is dependent on what a realistic view of the facts justifies or requires. See Gates, 462 U.S. at 213, 103 S.Ct at 2317, 76 L.Ed.2d at 527; Council, 442 So.2d at 1072 n. 1. Because no reasonable person would have believed that Maya was engaged in a Meals on Wheels delivery to Espinosa, even judges are not required to do so.